IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

PROTECTIVE LIFE INSURANCE COMPANY          INTERPLEADER PLAINTIFF

v.                      Case No. 6:25-cv-06030

THE ESTATE OF SUMMER WILLIAMS;
BETHANY YOUNG; and MASON PRICE          INTERPLEADER DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Interpleader Defendant Mason Price's ("Mr. Price") Motion for Summary Judgment. (ECF No. 49). Interpleader Defendants Bethany Young ("Ms. Young") and The Estate of Summer Williams ("the Estate") have filed responses in opposition. (ECF Nos. 53, 54). Mr. Price replied. (ECF No. 55). The Court finds the matter ripe for consideration.

## I. BACKGROUND[1]

This case is about the validity and enforceability of the deceased Summer Williams' ("Summer") beneficiary designation of Mr. Price under her life insurance policy issued by now-dismissed Interpleader Plaintiff Protective Life Insurance Company ("Protective"). On March 20, 2019, Protective issued a life insurance policy ("the Policy") with a face value of $500,000 to Summer. Summer's parents, Debbie and Jay Williams, were listed as the primary beneficiaries when the Policy was originally issued. The Estate was listed as the 100% contingent beneficiary at that time. On August 2, 2023, Summer electronically changed her designated beneficiary under the Policy to the Estate.

---

[1] The following facts come from Mr. Price's statement of undisputed facts. (ECF No. 51). Neither Ms. Young nor the Estate, the nonmovants, filed a statement of disputed material facts.

Summer suffered from bipolar disorder and posttraumatic stress disorder. During the month of November 2023, Summer twice voluntarily admitted herself to Levi Hospital, a mental health facility, on an inpatient basis due to suicidal thoughts. During her first admission, Summer was an inpatient at Levi Hospital from November 1 to November 9, 2023. During her second admission, she was an inpatient from November 12 to November 14, 2023. The discharge summaries of both November 2023 admissions reflect that Summer was "alert and oriented to person, place, and time" when she was discharged from Levi Hospital. (ECF No. 49-1, at 95, 103).

On November 17, 2023, three days after her discharge from the Levi Hospital, Summer electronically changed her designated beneficiary under her Policy to Ms. Young, who was her roommate at the time. Ms. Young testified that during this period, Summer paid her bills and signed leases. *Id.* at 80. Ms. Young also testified that she did "not have any reason to believe" that Summer did not have the capacity to name her as her beneficiary. *Id.*

Ms. Young testified that when Summer returned home from her second November 2023 stay at Levi Hospital, she told her that she met Mr. Price, another patient, during her stay. *Id.* at 82. Ms. Young testified that Summer and Mr. Price frequently called and texted each other, as well as "h[u]ng out all day and d[id] relationshippy stuff" at Summer and Ms. Young's house. *Id.* at 83. A few days later, Summer decided to move Mr. Price into her house. On November 21, 2023, after a dispute between Summer and Ms. Young, Ms. Young moved out. *Id.* at 81, 84. Ms. Young testified that she never spoke to Summer after November 21, 2023. *Id.* at 86.

On November 28, 2023, Summer electronically changed the designated beneficiary of the Policy to Mr. Price. *Id.* at 117. Summer's friend Kylie Thielmann testified that Summer told her that she was "engaged" to Mr. Price. *Id.* at 111. Another of Summer's friends, Sheila Hinton, testified that Summer told her that she changed her life insurance beneficiary to Mr. Price because

"they were going to have children together." *Id.* at 114. Both friends testified that they believed that Summer was competent and able to make her own decisions at that time. *Id.* at 111, 115. Mr. Price's grandmother, Sandra Couture, also testified that she and Summer became "close friends" and spoke until Summer's passing. Mrs. Couture testified that Summer told her that she made Mr. Price the beneficiary of her Policy and that she appeared competent to make her own decisions. *Id.* at 112.

Summer and Mr. Price moved out of Summer's house and lived together from November 2023 until February 2024, when he was incarcerated for three months. Summer called and visited Mr. Price while he was in jail. She also attended all his court appearances. While Mr. Price was incarcerated, Summer continued to live in Mr. Price's camper until May 2024, when she moved in with another roommate. Mr. Price had no contact with Summer from May 2024 until she died on December 7, 2024. At the time of Summer's death, Mr. Price remained the listed beneficiary to Summer's Policy.

On December 17, 2024, January 3, 2025, and January 30, 2025, Protective attempted to contact Mr. Price about his designation as beneficiary to the Policy. On December 23, 2024, Summer's sister, Autumn Williams, emailed Protective to challenge Mr. Price's designation as the Policy's primary beneficiary. On March 19, 2025, Protective initiated this interpleader action against Mr. Price, Ms. Young, and the Estate to determine who is entitled to the Policy's death benefit. (ECF No. 2). On November 12, 2025, the Court ordered Protective to deposit the policy proceeds into the registry of the Court. (ECF No. 36). On November 25, 2025, Protective deposited the $537,808.22 Policy proceeds into the registry. The Court subsequently granted Protective's motion to be dismissed from this matter with prejudice. (ECF No. 46).

3

On February 17, 2026, Mr. Price filed a motion for summary judgment.  (ECF No. 49).  Mr. Price requests the Court to declare him the lawfully designated beneficiary of the Policy and to direct that the Policy proceeds, which is currently held in the registry of the Court, to be delivered to him.  On March 12, 2026, Ms. Young and the Estate filed responses in opposition to Mr. Price's motion. (ECF Nos. 53, 54).  Mr. Price replied on March 17, 2026.  (ECF No. 55).

## II.   STANDARD OF REVIEW

When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material only when its resolution affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik*, 47 F.3d at 957.  "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."  *Thomas v. Corwin*, 483 F.3d 516, 526-27 (8th Cir. 2007).

## III.  DISCUSSION

As a preliminary matter, the Court must address the statement of undisputed material facts. Then, the Court will consider the merits of Mr. Price's motion.

### A.  Statement of Undisputed Facts

Under the Court's local rules, a party moving for summary judgment is required to file a statement of undisputed material facts.  Local Rule 56.1(a); *see* Fed. R. Civ. P. 56(c).  The non-moving party is required to file a "short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried" in addition to its response.  Local Rule 56.1(b).  A party asserting a genuine dispute of material facts must support the assertion by either citing materials in the record or by showing that the cited materials do not establish the absence or presence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).  The Court may deem the movant's facts undisputed and admitted unless they are controverted by the statement of disputed material facts filed by the non-moving party.  Local Rule 56.1(c); *see* Fed. R. Civ. 56(e).

Mr. Price filed a statement of undisputed material facts with his motion for summary judgment.  (ECF Nos. 49, 51).  Neither Ms. Young nor the Estate filed a statement of disputed material facts.  Rather, Ms. Young and the Estate only filed responses in which they deny, admit, or declare insufficient knowledge of the statements in Mr. Price's motion for summary judgement.  (ECF Nos. 53, 54).  These responses did not identify the facts they contend are disputed, include specific citations to materials in the record, or establish the absence or presence of a genuine dispute.  *See* Fed. R. Civ. P. 56(c)(1).  The Court finds that Ms. Young and the Estate have not properly controverted Mr. Price's asserted facts under Federal Rule of Civil Procedure 56(c) and Local Rule 56.1.  Accordingly, all facts asserted in Mr. Price's statement of facts are deemed admitted for summary judgment purposes. *Spence v. Union Pac. R.R. Co.*, No. 3:17-cv-3074-TLB,

5

2019 WL 1281244, at *1 (W.D. Ark. Mar. 20, 2019) (deeming admitted the summary judgment movant's asserted facts when the nonmovant failed to controvert them as required by Local Rule 56.1).

### B.   Merits of the Summary Judgment Motion

Mr. Price argues that there are no material facts in dispute regarding the validity and enforceability of Summer's designation of him as the beneficiary of her Policy for three reasons. First, Mr. Price argues that the evidence shows that Summer complied with Protective's procedures for changing the beneficiary designation on her Policy and that she intended to make those changes.  (ECF No. 50, at 8).  Second, Mr. Price argues that there is no evidence supporting Ms. Young and the Estate's allegations that Summer lacked the mental capacity to make or understand the changes she made to her Policy beneficiary.  (ECF No. 50, at 14).  Third, Mr. Price argues that there is no evidence supporting the allegations by Ms. Young and the Estate that Mr. Price improperly influenced or controlled Summer's decision to designate him as the beneficiary of the Policy.  (ECF No. 50, at 16).

Under Arkansas law, it is the duty of the Court "to enforce contracts as they are written and in accordance with the ordinary meaning of the language used and the overall intent and purpose of the parties." *Fry v. Fry*, 463 S.W.3d 738, 741 (Ark. App. 2015); *see Seidenstricker Farms v. Doss Family Trust*, 270 S.W.3d 842 (Ark. 2008) (declining to read language into a contract that is not there and enforcing the contract as written); *see also McGrew v. Farm Bureau Mut. Ins. Co. of Ark., Inc.*, 268 S.W.3d 890, 894-95 (Ark. 2007) ("[T]he language in an insurance policy is to be construed in its plain, ordinary, and popular sense.").  Further, Arkansas courts construing provisions in insurance policies as to beneficiaries should determine the intent of the policy holder "from the instrument itself" and give effect to that intent." *See Spencer v. Floyd*, 785 S.W.2d 60,

6

64 (Ark. App. 1990) (citing *Am. Found. Life Ins. Co. v. Wampler*, 497 S.W.2d 656 (Ark. 1973)) (explaining that Arkansas courts construe beneficiary provisions of insurance policies in accordance with the rules applicable to the construction of wills).

Mr. Price argues that the Policy clearly explains the steps through which a policy holder may change a beneficiary online through Protective's website. It is undisputed that Summer electronically changed her beneficiary designation to Mr. Price according to the express terms of the Policy on November 28, 2023, and that Mr. Price remained the beneficiary until the date of Summer's death.

Mr. Price also argues that Summer understood how to change the Policy beneficiary and the effects of changing the Policy beneficiary because she had changed the beneficiary electronically twice before assigning Mr. Price as the beneficiary. On August 2, 2023, Summer electronically changed her beneficiary designation from her parents to the Estate, and on November 17, 2023, Summer changed her beneficiary designation from the Estate to Ms. Young. After each change, including the November 28, 2023 change to Mr. Price, Summer received an acknowledgment from Protective noting that "[t]his [c]hange of [b]eneficiary replaces all previous beneficiary designations." (ECF No. 49-1, at 73). Mr. Price introduces affidavits of Summer's friend, Ms. Hinton, and Mr. Price's grandmother, who both testify that Summer told them that she was designating Mr. Price as her beneficiary. Neither Ms. Young nor the Estate offer any evidence indicating that Summer did not properly follow the Policy procedure or that Summer did not intend to designate Mr. Price as her beneficiary. Accordingly, the Court finds that the undisputed facts demonstrate that Mr. Price is the Policy beneficiary and that Summer intended to designate him as her beneficiary.

The Estate alleged in its pleadings that Summer's designation of Mr. Price is void because Summer lacked the mental capacity to make and understand the changes to the Policy beneficiary designations on November 17 and 28, 2023.  (ECF No. 24, at ¶29).  Arkansas law presumes that every person is "sane, fully competent, and capable of understanding the nature and effect of [their] contracts."  *Union Nat. Bank of Little Rock v. Smith*, 400 S.W.2d 652, 653 (Ark. 1966) (citations omitted).  The burden of proving mental incapacity rests on those seeking to void the contract to show the executor's "mental incapacity to execute [it] by a preponderance of the evidence."  *Id; see also Kelly's Heirs v. McGuire*, 15 Ark. 555, 597 (Ark. 1855) ("[Arkansas] law presumes there is full capacity to contract, and mental incapacity forms an exception to the general rule; which must be shown by those who would set aside the contract.").  The maker of a deed, will, or other instrument possesses sufficient mental capacity to execute that instrument if she "has sufficient mental capacity to retain in [her] memory, without prompting the extent and condition of [her] property, and to comprehend how [she] is disposing of it and to whom and upon what consideration[.]"  *Union Nat. Bank of Little Rock*, 400 S.W.2d at 356.

Mr. Price argues that evidence shows that Summer had the mental capacity to designate Mr. Price as her beneficiary two weeks after her discharge from the Levi Hospital on November 28, 2023.  It is undisputed that the discharge summaries for both Summer's November visits to the Levi Hospital state that upon discharge, Summer was "alert and oriented to person, place, and time," her "[t]houghts were linear with no acute psychotic symptoms," and she "denied suicidal and homicidal ideation."  (ECF No. 49-1, at 95, 103).  Further, Mr. Price offers testimonial evidence from Summer's friends, whom she saw and spoke with after her discharge, that Summer was able to make her own decisions during that time period.  Finally, Dr. Santos, a board certified psychiatrist and Mr. Price's expert witness, opines that there is no indication from Summer's

8

medical records that she was incompetent to make decisions over her affairs on November 28, 2023. (ECF No. 49-1, at 177). The Estate, who has the burden to demonstrate Summer's mental incapacity, does not dispute Mr. Price's evidence or introduce any evidence suggesting mental incapacity. Accordingly, the Court finds that the Estate has not met its burden to overcome the presumption that Summer had the mental capacity to designate Mr. Price as the Policy beneficiary on November 28, 2023.

Finally, both Ms. Young and the Estate alleged in their pleadings that the designation of Mr. Price is void because he unduly influenced Summer to designate him as the Policy beneficiary. (ECF Nos. 25, at ¶¶13-14; 24, at ¶30). Ms. Young alleges in her answer that she "personally witnessed" Mr. Price abuse and control Summer, and the Estate alleges that Mr. Price unduly influenced or coerced Summer while she was under inpatient psychiatric care. *Id.* Under Arkansas law, undue influence is "not the legitimate influence which springs from natural affection, but the malign influence which results from fear, coercion, or any other cause that deprives the testator of his free agency in the disposition of his property." *Short v. Stephenson*, 386 S.W.2d 501, 502 (Ark. 1965). Unless the beneficiary procures the making of the instrument from which they later benefit or a confidential relationship exists between a grantor and grantee, the party challenging the validity of the instrument must prove by a preponderance of the evidence that the grantor was unduly influenced at the time the instrument was executed. *See Conseco Life Ins. Co. v. Williams*, No. 4:06cv001378 SWW, 2009 WL 2151351, at *7 (E.D. Ark. July 17, 2009) (interpreting Arkansas law). In this case, Ms. Young and the Estate hold the burden to prove undue influence because neither burden shifting circumstance applies.[2]

---

[2] Whether two individuals have a confidential relationship is a question of fact, and no party argues that a confidential relationship existed between Mr. Price and Summer. *See Medlock v. Mitchell*, 234 S.W.3d 901, 905 (Ark. App. 2006) (finding that a confidential relationship existed between a husband and wife because of their marriage and the husband's terminal illness and, alternatively, because the husband granted the wife power of attorney). To the Court's

Mr. Price argues that there is no evidence that he unduly influenced or coerced Summer to designate him as the Policy beneficiary.  Mr. Price testified that he and Summer were in love and that Summer had become part of his family.  (ECF No. 49-1, at 125).  He further testified that Summer told him that she changed her Policy beneficiary from Ms. Young to him after she had a falling out with Ms. Young.  *Id.*  Mr. Price testified that Summer never told him the dollar amount of the Policy.  *Id.*  Summer's friend, Ms. Hinton, testified that Summer told her that she changed the Policy beneficiary from Ms. Young to Mr. Price because "she and [Mr. Price] were going to have children together."  *Id.* at 114.

Though Ms. Young alleged in her pleadings that she personally witnessed Mr. Price abuse Summer, Ms. Young clarified in her deposition that she never witnessed Mr. Price physically harm, threaten, or pressure Summer and that Summer had never told Ms. Young that Mr. Price physically harmed, threatened, or pressured her.  *Id.* at 88.  Autumn Williams, Summer's sister and the administrator of the Estate, testified that she had no contact with Summer during October, November, and December 2023 and that she had no firsthand knowledge of Summer's relationship with Mr. Price.  *Id.* at 131-32.  Ms. Young and the Estate do not introduce any evidence demonstrating undue influence or coercion on the part of Mr. Price or dispute the testimony presented by Mr. Price.  Accordingly, the Court finds that Summer was not unduly influenced to designate Mr. Price as her Policy beneficiary.

In sum, the Court finds that Summer had sufficient mental capacity, was not unduly influenced or coerced, and followed the proper process laid out by the Policy to designate Mr. Price as her Policy beneficiary.  Accordingly, the Court finds that Mr. Price is the lawfully designated beneficiary of the Policy and directs the policy proceeds to be delivered to him.

---

knowledge, no Arkansas court has held that a boyfriend-girlfriend relationship alone creates a confidential relationship.

## IV.   CONCLUSION

For the reasons stated above, the Court finds that Mason Price's Motion for Summary Judgment (ECF No. 49) should be and hereby is **GRANTED**.  The Court **DIRECTS** the Clerk of Court to deliver the policy proceeds to Mr. Price.

**IT IS SO ORDERED**, this 6th day of April, 2026.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge